J. A18004/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

SHELLEY A. TUZZATO : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
JOSEPH TUZZATO, : No. 1698 MDA 2014
:
Appellant :

Appeal from the Order Entered September 8, 2014,
in the Court of Common Pleas of Dauphin County
Civil Division at No. 2002 CV 441

BEFORE:  FORD ELLIOTT, P.J.E., STABILE AND MUSMANNO, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:       **FILED SEPTEMBER 16, 2015**

Joseph Tuzzato ("Husband") appeals from the order entered September 8, 2014, in the Court of Common Pleas of Dauphin County that granted Shelley Tuzzato's ("Wife") petition to enforce a provision in the parties' Marital Settlement Agreement ("MSA") under which both parties agreed to pay one-half of their children's college expenses if they attended a "state institution."  We affirm.

On appeal, Husband raises three issues for our consideration:

> 1. WHETHER THE TRIAL COURT COMMITTED A FUNDAMENTAL ERROR OF LAW IN FAILING TO CONCLUDE THAT PARAGRAPH 25 OF THE PARTIES' SETTLEMENT AGREEMENT COMPRISED A CLEAR AND UNAMBIGUOUS CONTRACT WHICH THE COURT SHOULD HAVE ENFORCED AS WRITTEN?

2. WHETHER THE TRIAL COURT COMMITTED A FUNDAMENTAL ERROR OF LAW BY REQUIRING JOSEPH TO REIMBURSE SHELLEY FOR EXPENSES SHE DID NOT PAY, BUT RATHER WERE PAID FOR ENTIRELY BY THE PROCEEDS OF FUNDS BORROWED BY THE CHILDREN?

3. WHETHER THE TRIAL COURT COMMITTED A FUNDAMENTAL ERROR OF LAW BY NOT INTERPRETING PARAGRAPH 25 OF THE PARTIES' MARITAL SETTLEMENT AGREEMENT TO REQUIRE THE PARENTS TO EACH PAY FIFTY (50) PERCENT OF ANY REMAINING ACCOUNT BALANCE FOR EDUCATIONAL EXPENSES AFTER APPLICATION OF GRANTS, SCHOLARSHIPS, AND LOANS GRANTED TO THE CHILDREN?

Husband's brief at 4.

We review an order interpreting an MSA to determine whether the trial court committed an error of law or abuse of discretion. ***Tuthill v. Tuthill***, 763 A.2d 417, 419 (Pa.Super. 2000) (***en banc***), ***appeal denied***, 775 A.2d 808 (Pa. 2001).

> We do not usurp the trial court's fact-finding function. In interpreting a marital settlement agreement, contract principles apply. Thus, the following principles are relevant:
>
>> The paramount goal of contract interpretation is to ascertain and give effect to the parties' intent. To accomplish this goal, each and every part of the contract must be taken into consideration and given effect, if possible, and the intention of the parties must be ascertained from the entire instrument.
>
> [***Laudig v. Laudig***, 624 A.2d 651, 653 (Pa.Super. 1993)].

***Id.*** (some internal citations and quotation marks omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Jeannine Turgeon, we determine there is no merit to the issues Husband raises on appeal. The trial court opinion comprehensively discusses and properly disposes of the issues presented. (***See*** trial court opinion, 12/18/14 at 4-6.) Accordingly, we affirm on the basis of that opinion.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/16/2015

# APPENDIX A

SHELLEY TUZZATO

V.

JOSEPH TUZZATO

: IN THE COURT OF COMMON PLEAS,
: DAUPHIN COUNTY, PENNSYLVANIA
: NO. 2002 CV 441

ORDER OF COURT

AND NOW, this 8th day of September, 2014, the Petition for Enforcement of Marital Settlement Agreement is granted. Based upon Section 25 of the parties' Marriage Settlement Agreement, Defendant/Respondent shall reimburse Plaintiff/Petitioner and shall pay in the future directly to Plaintiff/Petitioner upon receipt of valid invoices 50 percent of their children's post secondary education expenses at a college or university at a state institution or what I believe is also considered in that state related universities including Pitt, Lincoln, Temple, and Penn State for the children's tuition, room and board, books, student fees and activity fees less any non-reimbursable grants they may receive and less the 75 percent tuition discount/educational privilege provided by Plaintiff/Petitioner pursuant to her employment at Penn State Milton Hershey Medical Center.

Attorney's fees are not awarded to Plaintiff/Petitioner based upon the argument which I find was a valid issue to be presented to the Court as to the definition of state institution.

Reimbursement shall be in an amount as agreed to by the parties, following a post hearing conference today

and submission to Respondent/Defendant of the children's additional expenses including books and activity fees which may or may not be on the exhibits presented to the Court today.

BY THE COURT:

JEANNINE TURGEON, JUDGE

Distribution:
Susan Kadel, Esq., PO Box 650, Hershey, PA 17033
Douglas P. France, Esq., 2675 Eastern Blvd, York, PA 17402

SEP 08 2014

I certify that the foregoing is a
true and correct copy of the original
filed.

Deputy Clerk

# APPENDIX B

RECEIVED
OFFICE OF
PROTHONOTARY

2014 DEC 18 PM 2:57

DAUPHIN COUNTY
PENNA

SHELLEY TUZZATO,
    Plaintiff

v.

JOSEPH TUZZATO,
    Defendant

: IN THE COURT OF COMMON PLEAS
: DAUPHIN COUNTY, PENNSYLVANIA
:
:
: NO. 2002 CV 441 DV
:
:
: DIVORCE – Petition to Enforce
: Marital Settlement Agreement (Appeal)

## OPINION

Before the Court is Defendant Joseph Tuzzato's appeal from this Court's Order of September 8, 2014, which granted Plaintiff Shelley Tuzzato's petition to enforce a provision in the parties' Marital Settlement Agreement under which both parties agreed to pay one-half of their children's college expenses if they attended "a state institution." This opinion is written in support of the order, pursuant to Pa.R.A.P. 1925(a).

## Background

The parties were married in 1992 and divorced in May 2003. They have three children, currently ages 21, 18 and 16. On February 11, 2003, they entered into a Marital Settlement Agreement (MSA). Paragraph 25 of the MSA requires that each party equally share the cost of the children's college expenses, as follows:

### ¶ 25 POST-SECONDARY EXPENSES

Each party shall pay fifty percent (50%) of the children's post-secondary education expense. "Post-secondary education" is defined as a trade school or a four-year college program ending in receipt of a baccalaureate degree at a state institution, such as Shippensburg, and not a private school. "Educational expenses" is defined as: tuition; room; board; student fees; and activity fees.[1]

(Plaintiff's Exbt. 1)

---

[1] Parents are not legally required to provide postsecondary education support to their adult children. Curtis v. Kline, 542 Pa. 249, 666 A.2d 265 (1995). However, parents may nevertheless voluntarily enter into a contractual arrangement to provide such support.

On June 26, 2014, Plaintiff filed a petition to enforce the terms of this provision arguing that Defendant was in breach thereof whereby he had failed to pay one-half of the educational expenses for the two oldest children. As of the Fall 2014 semester, both children were enrolled at Penn State University's main campus in State College. Plaintiff, at all relevant times, has been employed by Penn State Hershey Medical Center and as such, her children are entitled to a 75% discount on their Penn State tuition.

Defendant responded to Plaintiff's petition to enforce arguing he was not required to pay any of the children's educational expenses since Penn State was not a "state institution." Instead, he claimed that Penn State was a private institution and that the only institutions encompassed within the meaning of Paragraph 25 included schools that were members of the Pennsylvania State System of Higher Education (PASSHE), like Shippensburg.[2] I held a hearing September 8, 2014. Defendant objected at the hearing to the admission of any evidence as to the parties' intent concerning Paragraph 25, claiming that the language was unambiguous and clearly excluded Penn State as an institution for which he would be required to pay educational expenses. (N.T. 12-13) I denied his request and permitted the admission of parol evidence.

At the conclusion of the hearing, I entered an order holding that Defendant was obligated to pay one-half of the children's Penn State educational expenses. I found that Penn State, as a state-related entity, qualified as a "state institution" as intended by the parties under Paragraph 25. With regard to the amount of the obligation, I held that each party owed one-half of all tuition, room and board, books, student fees, and activity fees after the deduction of grants the children received as well as a deduction for the 75% tuition discounts to which they were entitled. I did not deduct from the amount owed by the parties any student loans taken out by the children. Defendant filed a timely appeal from my decision, currently pending.

---

[2] There are fourteen schools within the State System of Higher Education are Bloomsburg, California, Cheyney, Clarion, East Stroudsburg, Edinboro, Indiana, Kutztown, Lock Haven, Mansfield, Millersville, Shippensburg, Slippery Rock and West Chester. (Defendant's Exbt. 2)

## Legal Discussion

In his statement of errors complained of on appeal, Defendant raises numerous issues, distilled to the following: (1) the trial court erred by finding that Penn State was a "state institution"; (2) the court erred by finding Paragraph 25 to be ambiguous and thereby permitting Plaintiff to present parol evidence; and (3) assuming the court properly found that Defendant was obligated to pay educational expenses under Paragraph 25, the court erred by ordering Defendant to pay any portion of expenses from which the children's loan monies were not deducted.

"A [marital] settlement agreement between [spouses] is governed by the law of contracts unless the agreement provides otherwise." Stamerro v. Stamerro, 889 A.2d 1251, 1258 (Pa. Super. 2005) (citation omitted). As a contract, the parties' agreement is subject to the following principles:

> The paramount goal of contract interpretation is to ascertain and give effect to the parties' intent. To accomplish this goal, each and every part of the contract must be taken into consideration and given effect, if possible, and the intention of the parties must be ascertained from the entire instrument.

Tuthill v. Tuthill, 763 A.2d 417, 419 (2000) (quoting Laudig v. Laudig, 624 A.2d 651, 653 (Pa. Super. 1993)).

> The intent of the parties to a written contract is contained in the writing itself. When the words of a contract are clear and unambiguous, the parties' intent is to be found only in the express language of the agreement. The court must construe a contract as written and may not modify the plain meaning of the contract under the guise of interpretation. Where the contract terms are ambiguous, however, the court is free to receive extrinsic [or parol] evidence to resolve the ambiguity.

> A contract will be found to be ambiguous only if it is fairly susceptible of different constructions and capable of being understood in more than one sense. It is the function of the court to decide, as a matter of law, whether the contract terms are clear or ambiguous. The fact that the parties have different interpretations of a contract does not render the contract ambiguous.

Id. at 420 (citations omitted).

3

"If left undefined, the words of a contract are to be given their ordinary meaning." Kripp v. Kripp, 849 A.2d 1159, 1163 (Pa. 2004) (citation omitted). As a general rule, agreements will be construed against the drafter when the terms are ambiguous. Gallagher v. Fidelcor, Inc., 657 A.2d 31, 34 (Pa. Super. 1995) (citation omitted). The MSA here was drafted by Defendant's prior attorney and thus, to the extent it is ambiguous, is construed against Defendant.[3] (N.T. 19)

In his first two issues raised on appeal, Defendant argues that the meaning of "state institution" is clear and unambiguous in that it encompasses only those schools within the PASSHE, excluding non-state institutions like Penn State, and that as such, the court erred by finding the term ambiguous and allowing presentation of extrinsic, or parol evidence. I disagreed that the language in Paragraph 25 could only be interpreted as requiring the parties to pay educational expenses incurred solely at PASSHE schools. Nothing in the plain language of Paragraph 25 limits the meaning of "state institutions" solely to PASSHE schools. Instead, the language is "fairly susceptible of different constructions and capable of being understood in more than one sense." Tuthill, supra. "State institution" can be fairly interpreted to include Pennsylvania's "state-related" institutions, which includes Penn State. (N.T. 33) See, Roy v. The Pennsylvania State University, 568 A.2d 751, 752 n. 3 (Pa. Commw. 1990) (noting there are four state-related schools in Pennsylvania, including Penn State, Pitt, Lincoln and Temple); see also, Bagwell v. Pennsylvania Dep't of Educ., 76 A.3d 81, 87 (Pa. Commw. 2013) (PSU is both a state-related institution and an instrumentality of the Commonwealth). This court believes that, to many if not most Pennsylvanians, a plain and ordinary meaning of the term "state institution" clearly includes Penn State. Kripp, supra.

Having determined that Paragraph 25 of the MSA is ambiguous as to the meaning of "state institution," this court was free to receive extrinsic evidence to resolve the ambiguity. (N.T. 17) Plaintiff credibly testified that she has always believed that Penn State was a "state intuition" as used in Paragraph 25. (N.T. 18) Notably, at the time parties executed the MSA in 2003, Plaintiff was an employee of Penn State Hershey Medical Center. One of the employee

---

[3] Both parties were represented by counsel in executing their Marital Settlement Agreement. (Petition to Enforce ¶ 6)

4

benefits available to her then was that her children could attend Penn State at a discounted tuition. (N.T. 19) She thus assumed that her attorney, Defendant and his attorney, who drafted the MSA, were all aware of her work situation and the availability for her children of a tuition discount and thus, she believed the MSA was written with the understanding that Penn State was an institution under the state system. (N.T. 20)

It is notable as well that Defendant admitted that when the parties' second child was looking at colleges during the summer of 2013, he took her to visit Penn State; he did not take her to Shippensburg nor to any of the other thirteen PASSHE schools. (N.T 31-32) Defendant also testified that when the parties' oldest child commenced his first year of college at Penn State Harrisburg in 2012, Plaintiff asked Defendant pay his share of the expenses. Defendant admitted that he told Plaintiff he would not pay any expenses because he did not have enough money since he was paying for the tuition of the two younger children to attend parochial schools; he did not cite as the reason for his failure to pay that he did not consider Penn State a "state institution." (N.T. 29-30)

Based upon this extrinsic evidence, I held that the parties understood and intended the term "state institution" under Paragraph 25 to include post-secondary institutions such as Penn State. As such, I directed that Defendant pay his equal share for all educational expenses incurred by the children while attending Penn State including those defined under Paragraph 25: tuition, room and board, and student and activity fees.[4]

Defendant's final argument is that he should not be required to reimburse Plaintiff for the loans that the children took out to defray educational expenses they incurred. Plaintiff testified that as of the hearing, the children had taken out loans totaling $14,000 to meet their expenses. (N.T.8; Plaintiff's Exbt. 4) As recited above, Paragraph 25 states that "[e]ach party shall pay fifty percent of the children's post-secondary educational expense." "Educational expense" is further defined as "tuition; room; board; student fees; and activity fees." Under these terms, so long as the children incur expenses for tuition, room and board, and fees, the parties are each

---

[4] Ironically, given the steep tuition discounts available to the children at Penn State by attending Penn State, Defendant may actually owe less for their expenses at Penn State than if the children attended Shippensburg. (See N.T. 5-9, 16; Plaintiff Exbt. 7)

contractually obligated to pay one-half of these expenses. There is no language in Paragraph 25 whatsoever suggesting that the children fund their own education, by loan or otherwise. The clear intent of Paragraph 25 is that the parties agreed to be entirely responsible for their children's actual post-secondary educational expenses so long as the children were matriculating at a state institution. The terms of the MSA in this regard are not ambiguous. Since Defendant does not dispute the amount of loans taken out by the children, or that the amount taken out was used to pay for educational expenses as defined under Paragraph 25, he is obligated to pay his one-half share of the expenses for which his children were required to obtain loans to pay.

Accordingly, I issued my decision September 8, 2014, from which Defendant has appealed.

_____December 18, 2014_____
Date

Jeannine Turgeon, Judge

Distribution:
Douglas France, Esq., 2675 Eastern Blvd., York Pa. 17402 (for Defendant)
Susan Kadel, Esq., P.O.B. 650, Hershey Pa. 17033 (for Plaintiff)

I hereby certify that the foregoing is a true and correct copy of the original filed.

Stephen C. Harina
Prothonotary DEC 1 8 2014

6

IN THE SUPERIOR COURT OF PENNSYLVANIA
MIDDLE DISTRICT

SHELLEY A. TUZZATO,
    Appellee

       vs.

JOSEPH TUZZATO,
    Appellant

:
:
:
:
:
:
:
:
:

No. 1698 M.D.A. 2014

## PROOF OF SERVICE

I hereby certify that I am this _20th_ day of February, 2014, serving the Brief of Appellant under the Pennsylvania Rules of Appellate Procedure 121, by first class, U.S. Mail, addressed as follows:

Office of the Prothonotary
The Superior Court of Pennsylvania
601 Commonwealth Avenue
Suite 1600
Harrisburg, PA 17106-2435

AND

Susan M. Kadel, Esq.
Law Offices JSDC
PO Box 650
Hershey, PA 17033

Respectfully Submitted:

FRANCEPASKEY

Douglas P. France, Esquire
Attorney No. PA 48744
2675 Eastern Blvd.
York, PA 17402-2905
Phone: (717) 757-4565



PB 1P 000
3660710
PRML
0005
CPU U.S. POSTAGE
$7.55
MAILED FEB 19 2015
17402

Received in Superior Court

FEB 2 0 2015

MIDDLE

IN THE SUPERIOR COURT OF PENNSYLVANIA
HARRISBURG DISTRICT

SHELLEY A. TUZZATO,
    Appellee     :
             :
             :
vs.          :  No. 1698 M.D.A. 2014
             :
JOSEPH TUZZATO     :
    Appellant     :

## AVERMENT

COMMONWEALTH OF PENNSYLVANIA :
            : ss:
COUNTY OF YORK      :

Douglas P. France, Esquire, being duly sworn, deposes and says that the material on the enclosed CD is an accurate and complete representation of the paper version of the Brief and Reproduction of Records of Appellant, Joseph Tuzzato, filed in the above-captioned case.

SIGNED, SEALED AND DELIVERED this 19th day of February, 2015.

_____
Douglas P. France

Sworn and subscribed to
before me this 19th day
of February, 2015

_____
Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Leona C. Larkin, Notary Public
Springettsbury Township, York County
My Commission Expires September 01, 2015